# Illinois Official Reports

## Appellate Court

***People v. Rosado*, 2016 IL App (1st) 140826**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NESTOR ROSADO, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-0826 |
| Filed | September 9, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 03-CR-11388-01, 04-CR-13881-01; the Hon. Charles P. Burns, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Raymond G. Wigell and Huma Rashid, both of Law Offices of Raymond G. Wigell, Ltd., of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Jon Walters, and Nancy Colletti, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE REYES delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon and Justice Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1        This appeal arises from the dismissal of defendant Nestor Rosado's first-stage postconviction petition. More than eight years after pleading guilty to two separate crimes of aggravated criminal sexual assault, defendant filed a postconviction petition alleging that the trial court erred in failing to conduct a *sua sponte* fitness hearing and that he received ineffective assistance of trial counsel. The circuit court dismissed the petition, and defendant appealed. While defendant raises four enumerated arguments on appeal, we find these arguments can be combined into two issues. Thus, on appeal, defendant contends he set forth adequate postconviction claims that (1) he was denied due process where the trial court erred in failing to conduct a *sua sponte* fitness hearing and (2) his trial counsel was ineffective for failing to request a fitness hearing. For the reasons that follow, we affirm.

¶ 2                                          BACKGROUND

¶ 3        Initially, we observe that defendant has failed to provide this court with a complete record, as numerous transcripts are missing. Accordingly, the facts recited herein are limited to the record provided to this court. We further observe that the record is sufficient to permit proper consideration of defendant's specific claims of error.

¶ 4        Defendant's postconviction petition challenged two separate convictions. In the first case, defendant was charged with 24 counts of aggravated criminal sexual assault, 4 counts of aggravated kidnapping, and 2 counts of kidnapping. In the second case, defendant was charged with 12 counts of aggravated criminal sexual assault, 3 counts of criminal sexual assault, 2 counts of aggravated kidnapping, 1 count of kidnapping, and 1 count of unlawful restraint. Each case occurred between 2002 and 2003.

¶ 5        Defense counsel requested a behavior clinical evaluation on July 7, 2003, to evaluate defendant's fitness to stand trial. Defense counsel informed the trial court that defendant informed counsel that he "has been on certain medications in the past." The trial court granted defendant's request.

¶ 6        Sharon Coleman (Coleman), a licensed clinical psychologist, examined defendant on July 16, 2003. Coleman opined, to a reasonable degree of psychological and scientific certainty, that defendant was fit to stand trial. Coleman observed that although defendant "presents with a history of chemical dependence and symptoms of a thought process disturbance, his condition appears to be in an adequate state of remission at this time and does not dramatically compromise his ability to understand the nature and the purpose of the proceedings currently pending against him." In fact, Coleman found defendant conveyed a "clear awareness of his current charge status and an adequate understanding of courtroom procedure, the role responsibilities of key courtroom personnel, and possible dispositions that could be rendered in his case. In addition, [defendant] was able to identify his public defender and adequately describe [counsel's] role. He also appropriately discussed his ability to work with [counsel] regarding his legal case." Coleman, however, indicated that defendant's fitness to stand trial with medication would need to be addressed by a forensic clinical services physician.

¶ 7        Dr. Carol Flippen (Flippen), a forensic clinical services physician, examined defendant on August 1, 2003. Flippen opined that, based on her examination and review of defendant's medical records, defendant was fit to stand trial with medication. Flippen indicated that

defendant "understands the nature of the proceedings against him and his current criminal charge." Flippen further found that if defendant chose to cooperate, he has the ability to assist his counsel toward his defense. Flippen indicated that, "If Mr. Rosado does not take the medications as prescribed, the symptoms of his mental illness can worsen and compromise his fitness to stand trial. It is recommended that Mr. Rosado take the psychotropic medication as prescribed and adjusted by his treating psychiatrist, to maintain fitness to stand trial."

¶ 8 On July 28, 2004, defense counsel informed the trial court that, after speaking with defendant, he caused counsel to believe that he was in need of a fitness evaluation. The trial court referred defendant to be examined for his fitness to stand trial and regarding his sanity at the time of the offenses.

¶ 9 On August 4, 2004, Dr. Peter Lourgos (Lourgos), a staff forensic psychiatrist, indicated that he attempted to evaluate defendant but that defendant was uncooperative with the examination. According to Lourgos, defendant's presentation was "extreme and consistent with malingering of symptoms as opposed to symptoms consistent with any known mental illness." Due to defendant's behavior, Lourgos was unable to render an opinion as to defendant's fitness to stand trial or his sanity at the time of the offenses.

¶ 10 The issue of defendant's fitness to stand trial was before the court on September 8, 2004. The trial court acknowledged its receipt of Lourgos's report and informed defendant that he had a choice of either cooperating with the doctor or waiving the issue. Defense counsel requested another evaluation and indicated she would speak with defendant. The trial court continued the matter to October 14, 2004.

¶ 11 On October 5, 2004, Coleman again evaluated defendant regarding his fitness to stand trial. Coleman, however, was unable to provide an opinion because defendant refused to participate or answer questions. According to Coleman, defendant's behavior "appears to be largely volitional and attributable to malingering." Upon receipt of this report, the trial court allowed defendant to obtain another fitness evaluation.

¶ 12 Lourgos informed the court on November 24, 2004, that he attempted to examine defendant on three separate occasions (August 4, 2004; September 24, 2004; and November 18, 2004) for the purpose of assessing defendant's fitness to stand trial and sanity at the time of the offenses. Lourgos indicated that defendant was uncooperative with the examinations as he refused to provide him with even basic information and further refused to participate in the examinations or answer questions. According to Lourgos, "Although there is evidence that Mr. Rosado suffers from a psychotic disorder, his current presentation appears to be largely volitional (*i.e.*, an attempt to malinger mental illness) as opposed to symptoms consistent with any known mental illness." Lourgos concluded that, due to defendant's uncooperativeness, he was unable to render an independent opinion as to his fitness to stand trial and his sanity. Based on this report, on November 29, 2004, defense counsel informed the trial court that defendant again had failed to cooperate and obtain a fitness evaluation. The trial court then set the matter for hearing on defendant's motion to suppress.

¶ 13 After the court conducted an evidentiary hearing and denied defendant's motion to suppress, on May 3, 2005, defense counsel again requested that the trial court order defendant be evaluated for sanity at the time of the offenses. The trial court acknowledged that defendant had not been complying with the physicians. Defense counsel replied that she had spoken with defendant. The trial court then continued the matter for defendant to obtain a fitness evaluation.

¶ 14      Licensed clinical psychologist Erick Neu (Neu) indicated in a June 3, 2005, letter to the trial court that, based on his examination of defendant, defendant was legally sane at the time of the offenses. According to Neu, "Although he appears to suffer from a legitimate psychotic disorder, there is ample evidence that he is exaggerating the severity of his symptoms (*i.e.* that he is malingering). *** Although he may have been suffering from a mental illness at the time of the alleged offense, it does not appear that his symptoms prevented him from being capable of appreciating the criminality of his behavior."

¶ 15      Thereafter, defendant agreed to a Rule 402 conference, and on October 4, 2005, the trial court explained to defendant the following:

"THE COURT: Mr. Rosado, your attorney informs me you wish to have a 402 conference. That is a conference between your attorney, the State's Attorney, and myself, the purpose of which is to see if the case can be disposed of without going to trial. Normally that is done through a plea of guilty.

At the end of this conference I would inform your attorney what I would do in exchange for a plea of guilty. The fact that I do that does not require you to plead guilty. You can continue to plead not guilty, have a trial—bench or jury—whatever you wish.

Understand?

DEFENDANT: Yes.

THE COURT: At the conference I would hear facts about you in this case I wouldn't normally hear. The fact I hear this information does not entitle you to ask for a substitution of judge. The case will stay here in front of me.

Do you understand that?

DEFENDANT: Yes.

THE COURT: Nothing I hear at this conference if you choose not to plead guilty will be used against you in any way. It would still be in front of me.

DEFENDANT: Yes.

THE COURT: Do you understand what I've just told you?

DEFENDANT: Yes.

THE COURT: Do you wish me to have this conference?

DEFENDANT: Yes."

¶ 16      The trial court then conducted a Rule 402 conference off the record. Upon recommencing the proceedings, the trial court informed defendant that both offenses were Class X felonies punishable by 6 to 30 years in the penitentiary or 30 to 60 years with an extended term and that the sentences would be served consecutively. The trial court further informed defendant that upon completion of his sentence he would be subject to three years of mandatory supervised release. The trial court then directly inquired of defendant if he understood and defendant replied, "Yes." The following exchange occurred:

"THE COURT: How do you wish to plead—guilty or not guilty?

DEFENDANT: Plea you said 30 years?

THE COURT: Yes, I did. Now the question is do you wish to plead guilty?

DEFENDANT: Is there any way I can plead guilty where it is insane?

[DEFENSE COUNSEL]: Your Honor, he was evaluated for sanity. He was found sane at the time. I have been to the jail three different times discussing this with Mr.—this particular issue with Mr. Rosado.

THE COURT: There is no such thing as guilty but insane. Not guilty by reason of insanity, but you have been found sane by the doctors. Has to be just a straight plea.

DEFENDANT: All right. I going to go to plead [*sic*].

THE COURT: Okay. So you wish to plead guilty; is that correct?

DEFENDANT: Yes."

¶ 17      Prior to accepting defendant's guilty plea, the trial court informed defendant of his rights:

"THE COURT: I want to make sure you understand all the rights you're giving up by entering this plea. Do you understand that by pleading guilty you are giving up your right to a jury trial. That's twelve citizens chosen by your lawyer and the Assistant State's Attorney who would sit and listen to the evidence against you and decide whether the State had proven you guilty beyond a reasonable doubt. All twelve of those jurors would have to unanimously agree that the State had proven you guilty beyond a reasonable doubt for you to be found guilty.

Do you understand what a jury is?

DEFENDANT: Yes.

THE COURT: Do you understand that by pleading guilty you're giving up your right to that jury?

DEFENDANT: Yes, sir.

THE COURT: Is this your signature on the jury waiver forms?

DEFENDANT: Yes.

THE COURT: That is the formal waiving of your right to a jury. Besides your right to a jury you are giving up your right to any trial whatsoever.

The other form of trial is a bench trial. In a bench trial a judge alone would sit and listen to the evidence against you and decide whether the State had proven you guilty beyond a reasonable doubt.

Do you understand you are giving up your right to a bench trial also?

DEFENDANT: Yes.

THE COURT: Besides your right to a trial you are giving up your right to confront and cross examine the witnesses against you.

Do you understand that?

DEFENDANT: Yes.

THE COURT: You are giving up your right to call witnesses on your own behalf.

Do you understand that?

DEFENDANT: Yes.

THE COURT: You are giving up your right to testify on your own behalf or remain silent as you choose.

Do you understand that?

DEFENDANT: Yes.

THE COURT: Has anybody made any threats to or promises to get you to waive your right to a jury?

DEFENDANT: No."

The trial court then had the assistant State's Attorney inform defendant of the charges and the evidence that would have been presented in support of those charges.

¶ 18        Upon finding there was a sufficient factual basis to find defendant guilty, the trial court addressed defendant:

"THE COURT: [K]nowing the nature of the charges, the possible penalties, knowing your rights under the law, do you still wish to plead guilty to the charges of aggravated criminal sexual assault on 03 11388, three counts of aggravated criminal assault, and a count of aggravated kidnapping and on 04 13881, to one count of aggravated criminal sexual assault?

DEFENDANT: Yes.

THE COURT: I find the defendant understands the nature of the charges, the possible penalties, knowingly waives his rights and there is a factual basis for a finding of guilty."

The trial court then advised defendant of his right to a presentence investigation report, which defendant waived.

¶ 19        When invited to address the court prior to sentencing, defendant responded through counsel that he was requesting a two-week stay of the mittimus. Defense counsel informed the trial court that she had related to defendant that the court could order the stay but that the jail might not honor it. The trial court inquired if defendant understood, to which defendant replied, "Yes, but are you going to try to give me the two-week?" The court responded, "I'll give you the two weeks. I don't know if the Sheriff will." The trial court then proceeded to sentence defendant on the first offense to 6 years' imprisonment in the Illinois Department of Corrections on each of the four counts for a total of 24 years. Regarding the second offense, the trial court sentenced defendant to 6 years' imprisonment on one count. These sentences were to be served consecutively for a total of 30 years' imprisonment.

¶ 20        Defense counsel then indicated that defendant was requesting to be held in protective custody downstate. The court replied, "I don't control that. I certainly don't object to it, but there is nothing I can do on that." The trial court then stayed the mittimus for two weeks and reiterated that he could not "guarantee anything on that stay because of the overcrowding at the jail." After informing defendant of his rights regarding an appeal, defendant addressed the court:

"DEFENDANT: One thing. Can I ask one thing? So for both the cases it is 30 years.

THE COURT: It is 30 years, 85% on 24 years and 50% time on the other six. Okay.

DEFENDANT: All together I don't do 30 for each case?

THE COURT: No, no, no; total of 30.

DEFENDANT: Okay."

With that exchange, the matter was adjourned. Defendant did not file a motion to vacate his plea, nor did he file an appeal from the conviction.

¶ 21 On January 6, 2014, defendant, with the assistance of private counsel, filed a petition for postconviction relief pursuant to section 122-1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). Defendant alleged that the trial court failed to order a *sua sponte* fitness hearing and that his trial counsel was ineffective for failing to request a fitness hearing. Defendant specifically asserted he did not take medication on September 29, 2005, five days prior to his guilty plea and that in the days prior to his plea he was exhibiting "bizarre behavior" and was "hearing voices, communicated with animals, [and] seemed delusional." Defendant attached his medical records to the petition along with his own affidavit in which he averred, "At the time I pled guilty I was prescribed several psychotropic medications. *** However, I refused those medications on several occasions while incarcerated at the Cook County Jail."

¶ 22 The circuit court denied defendant's petition on February 14, 2014, finding that it was frivolous and patently without merit. Regarding defendant's due process claim, in its written order, the circuit court indicated that defendant failed to explain how his failure to take his medication prior to pleading guilty affected his fitness to stand trial. The circuit court found that the record affirmatively demonstrated that defendant "undoubtedly understood the nature of the proceedings and the repercussions of entering a guilty plea based on his clear responses to the trial judge during the plea admonishments." The circuit court further found that defendant had been exaggerating the symptoms of his mental illness to the physicians who had conducted, or attempted to conduct, evaluations on defendant. Regarding defendant's ineffective assistance of counsel claim, the circuit court concluded it was contradicted by the record, which indicated that defendant understood the nature of the court proceedings and the ramifications of entering a plea of guilty. Defendant's postconviction petition was dismissed, and defendant now appeals.

¶ 23                                         ANALYSIS

¶ 24 On appeal, defendant claims that his postconviction petition should not have been dismissed at the first stage because he stated the gist of two constitutional claims: (1) the trial court erred in not ordering a fitness evaluation *sua sponte*, and (2) trial counsel was ineffective for failing to request a fitness evaluation. We consider each of defendant's arguments in turn.

¶ 25                                   Stages of the Act

¶ 26 The Act provides a remedy to criminal defendants who claim that substantial violations of their federal or state constitutional rights occurred in their original trials. 725 ILCS 5/122-1 *et seq.* (West 2014). A postconviction proceeding not involving the death penalty contains three distinct stages. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). At the first stage of a postconviction proceeding, a defendant need only allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Id.* at 11-12. The trial court independently reviews the petition, taking the allegations as true, and determines if it is frivolous or patently without merit. *Id.* at 10. A petition can be dismissed as frivolous or patently without merit if it has no arguable basis either in law or in fact. *Id.* at 11-12. More precisely, a petition lacks an arguable basis in law or in fact if the claim is based on an "indisputably meritless legal theory," meaning a theory that is completely contradicted by the record, or a "fanciful factual allegation," meaning assertions that are fantastic or delusional. *Id.* at 16-17. "The court is further foreclosed from engaging in any fact-finding or any review of

matters beyond the allegations of the petition." *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). At this stage, a defendant "need only present a limited amount of detail in the petition" and the "threshold for survival" is "low." *Hodges*, 234 Ill. 2d at 9. A *pro se* defendant need only allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Id.* "Thus, in our past decisions, when we have spoken of a [gist of a constitutional claim], we meant only that the section 122-2 pleading requirements are met, even if the petition lacks formal legal arguments or citations to legal authority." *Id.* "At the first stage of proceedings, we must accept as true all facts alleged in the postconviction petition, unless the record contradicts those allegations." *People v. Barghouti*, 2013 IL App (1st) 112373, ¶ 16 (citing *People v. Coleman*, 183 Ill. 2d 366, 385 (1998)).

¶ 27 If the circuit court does not dismiss the petition as frivolous or patently without merit, the petition advances to the second stage, where counsel may be appointed to an indigent defendant and where the State, as respondent, enters the litigation. *People v. Tate*, 2012 IL 112214, ¶ 10. At this second stage, the circuit court must determine whether the petition and any accompanying documentation make "a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001) (citing *Coleman*, 183 Ill. 2d at 381). If no such showing is made, the petition is dismissed. *Id.* at 246. If, however, a substantial showing of a constitutional violation is set forth, the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing. *Id.*; 725 ILCS 5/122-6 (West 2014).

¶ 28 In the case at bar, defendant is requesting this court reverse the circuit court's dismissal of his petition at the first stage and remand for second-stage proceedings. The question of whether a circuit court's summary first-stage dismissal was in error is purely a question of law, which we review *de novo*. *People v. Stephens*, 2012 IL App (1st) 110296, ¶ 82. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Id.*

¶ 29 A *Bona Fide* Doubt

¶ 30 Defendant first argues on appeal that he asserted an arguable claim that his due process rights were violated when the trial court failed to *sua sponte* order a fitness hearing due to his failure to take his medication and his bizarre behaviors, as evidenced by his medical records. Defendant maintains that these facts raise a *bona fide* doubt as to his fitness to plead guilty, and thus the circuit court should have *sua sponte* ordered a fitness hearing.

¶ 31 Due process bars the prosecution of an unfit defendant. *People v. Hanson*, 212 Ill. 2d 212, 216 (2004). A defendant is unfit to stand trial if, due to a mental or physical condition, he or she is unable to understand the nature and purpose of the proceedings or to assist in the defense. *People v. Brown*, 236 Ill. 2d 175, 186 (2010); 725 ILCS 5/104-10 (West 2014). The trial court must order a fitness hearing if a *bona fide* doubt is raised of the defendant's fitness. *Brown*, 236 Ill. 2d at 186; 725 ILCS 5/104-11(a) (West 2014). Relevant factors which a trial court may consider in assessing whether a *bona fide* doubt of fitness exists include (1) the defendant's irrational behavior, (2) the defendant's demeanor at trial, (3) any prior medical opinion on the defendant's competence, and (4) any representations by defense counsel on the defendant's competence. *Brown*, 236 Ill. 2d at 186-87 (citing *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991)). No fixed or immutable sign, however, invariably indicates the need for further inquiry on a defendant's fitness. *Eddmonds*, 143 Ill. 2d at 518. Rather, the question is "often a difficult one implicating a wide range of manifestations and subtle nuances." *Brown*, 236 Ill. 2d at 187.

Accordingly, the question of whether a *bona fide* doubt of fitness exists is a fact-specific inquiry. *Stephens*, 2012 IL App (1st) 110296, ¶ 91.

¶ 32 Moreover, the fact that a defendant suffers from mental disturbances or requires psychiatric treatment does not automatically result in a *bona fide* doubt of the defendant's fitness. *Eddmonds*, 143 Ill. 2d at 519. "Fitness speaks only to a person's ability to function within the context of a trial. It does not refer to sanity or competence in other areas. A defendant can be fit for trial although his or her mind may be otherwise unsound." *People v. Easley*, 192 Ill. 2d 307, 320 (2000) (citing *People v. Murphy*, 72 Ill. 2d 421, 432-33 (1978)); see also *Eddmonds*, 143 Ill. 2d at 519-20.

¶ 33 Here, the record does not reveal, and defendant does not provide, any basis that would arguably raise a *bona fide* doubt of his fitness. Regarding the first and third factors, defendant's postconviction petition alleged he had not taken his medication on September 29, 2005, and that he had exhibited "bizarre behavior" on September 30, 2005, and had told medical personnel that he "heard voices [and] communicated with animals" on October 1, 2005. As previously discussed, "the existence of a mental disturbance or the need for psychiatric care," however, "does not necessitate a finding of *bona fide* doubt since a defendant may be competent to participate at trial even though his mind is otherwise unsound." (Internal quotation marks omitted.) *Hanson*, 212 Ill. 2d at 224-25 (quoting *Eddmonds*, 143 Ill. 2d at 519). While the medical records support defendant's factual claims, the medical records do not set forth any medical opinions on the issue of defendant's fitness. Specifically, the medical records do not indicate defendant could not understand the trial proceedings and assist in his defense. This is not a situation where defendant has submitted a fitness evaluation that demonstrated he was not fit to stand trial (see *People v. Alberts*, 383 Ill. App. 3d 374, 378-79 (2008)), but one where defendant has submitted medical records that do not contradict the trial record and, in fact, demonstrate defendant assisted counsel in his defense and understood the proceedings (see *Stephens*, 2012 IL App (1st) 110296, ¶ 97).

¶ 34 Regarding the second factor, defendant argues that the record demonstrates he did not understand the proceedings during his guilty plea, namely that (1) he thought he could plead "guilty where it is insane"; (2) when asked how he wished to plead, he did not answer the question but instead asked what was the term of the plea; and (3) he did not appear to understand that he was not pleading guilty in exchange for 30 years on each count.

¶ 35 We cannot say that, under the second factor, defendant's conduct supports a finding of a *bona fide* doubt. A review of the record reveals that defendant's demeanor during these proceedings was rational and appropriate. Moreover, as noted by our supreme court, "While a cold record may be an imperfect means of evaluating defendant's behavior and demeanor, we note that the trial court had the opportunity to observe defendant's conduct and demeanor firsthand during the proceedings, yet expressed absolutely no concerns about defendant's ability to understand the nature of the proceedings or to work with counsel." *Hanson*, 212 Ill. 2d at 224. Similarly, the trial court here had the opportunity to observe defendant firsthand and did not express any concerns or make any observations regarding defendant's conduct. In fact, the trial court expressly inquired regarding defendant's ability to understand the ramifications of his guilty plea and accepted defendant understood the nature of the court proceedings. Moreover, the record demonstrates that defendant had the presence of mind to engage the court in questions regarding his sentence, the mittimus, and whether the court could order him to be

placed in protective custody. These interactions with the court further establish that defendant was aware of and understood the proceedings.

¶ 36 Turning to the final factor, the record does not disclose that trial counsel expressed any statements regarding defendant's ability to understand the nature and purpose of the proceedings against him and to assist in his defense. The record, however, does disclose that in instances where she had conferred with her client and found his fitness to be questionable, trial counsel alerted the court and requested an evaluation be conducted. During the October 4, 2005, court appearance, trial counsel conferred with defendant, yet counsel did not request a fitness evaluation be conducted. In addition, the record demonstrates defendant effectively conferred with his counsel as the record provides that defense counsel addressed the trial court regarding a stay of the mittimus and that defendant be placed in protective custody. Moreover, while trial counsel did request several fitness examinations prior to the guilty plea, "an assertion by counsel that a defendant is unfit does not, of itself, raise a *bona fide* doubt of competency." See *Eddmonds*, 143 Ill. 2d at 519.

¶ 37 After reviewing the relevant factors, we cannot say the record is sufficient to support an independent finding of a *bona fide* doubt. As we noted previously, the issue is not whether defendant was mentally ill, but rather whether defendant could understand the proceedings and cooperate with counsel. *Brown*, 236 Ill. 2d at 186. The record here definitively illustrates that defendant understood the nature and the purpose of the proceedings and was able to effectively communicate with counsel, and thus, there did not exist a *bona fide* doubt of defendant's fitness to stand trial.

¶ 38 Defendant further advocates for a departure from our supreme court's decision in *People v. Mitchell*, 189 Ill. 2d 312, 330-31 (2000), which held that the court's prior determination that the legislature equated the ingestion of psychotropic medication with a *bona fide* doubt of the defendant's fitness was erroneous, overruling *People v. Brandon*, 162 Ill. 2d 450 (1994), and *People v. Gevas*, 166 Ill. 2d 461 (1995). Defendant argues that we should adopt the *Gevas* holding, that a defendant receiving psychotropic medication must be granted a fitness hearing if his counsel requests one. *Gevas*, 166 Ill. 2d at 468-49. We decline to do so. *Mitchell*'s holding remains consistent with section 104-11(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104-11(a) (West 2004)), which was in effect at the time of defendant's plea (and has subsequently remained unchanged). This section of the Code provides that, "A defendant who is receiving psychotropic drugs shall not be presumed to be unfit to stand trial solely by virtue of the receipt of those drugs or medications." 725 ILCS 5/104-21 (West 2004). Accordingly, we will not presume that a defendant is entitled to a fitness hearing based on the fact that at the time of trial he is being treated by psychotropic medication. See *Mitchell*, 189 Ill. 2d at 330-31; *People v. Jones*, 191 Ill. 2d 354, 359 (2000) (declining to consider whether the trial court violated the petitioner's due process rights when it failed to conduct a fitness hearing based on the petitioner's ingestion of psychotropic drugs, finding the claim to be procedurally barred because it is not a constitutional claim that is cognizable in postconviction proceedings); *Brown*, 236 Ill. 2d at 187 (citing the *Mitchell* holding as good law).

¶ 39 We conclude defendant's postconviction claim, that the trial court's failure to order a *sua sponte* fitness hearing based on a *bona fide* doubt of defendant's fitness to stand trial, does not raise the gist of a constitutional claim.

Ineffective Assistance of Counsel

¶ 41   Defendant next contends that circuit court erred in dismissing his postconviction petition where he set forth the gist of a constitutional claim that trial counsel was ineffective for failing to request a fitness hearing. Defendant argues at length that the Illinois courts' application of *Strickland v. Washingto*n, 466 U.S. 668 (1984), for claims regarding defense counsel's conduct during a guilty plea places too high a burden on defendants. Defendant advocates for a more lenient standard, one that is "more focused on what kind of proceeding is actually at issue, and what kind of ineffective claim is being raised."

¶ 42   Defendant's argument does not take into consideration "what kind of proceeding is actually at issue" in this case. Generally, under *Strickland*, a defendant must prove that (1) counsel's performance fell below an objective standard of reasonableness, and (2) absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 687-88; *Brown*, 236 Ill. 2d at 185. While in an appeal from the conviction or during the second-stage review of a postconviction petition the *Strickland* standard applies, the standard for dismissal at the first stage under the Act requires "[a] different, more lenient formulation," amounting to a "lower pleading standard than [required at] the second stage of the proceeding." *Tate*, 2012 IL 112214, ¶¶ 19-20. Thus, a petition asserting ineffective assistance of counsel may not properly be summarily dismissed if it is *arguable* (1) counsel's performance fell below an objective standard of reasonableness and (2) defendant was prejudiced. *Brown*, 236 Ill. 2d at 185 (citing *Hodges*, 234 Ill. 2d at 17).

¶ 43   Generally, when a defendant seeks to establish counsel was ineffective for failing to seek a fitness hearing, the prejudice prong may be satisfied by demonstrating the trial court, had it been informed of the evidence at that time, would have found a *bona fide* doubt of the defendant's fitness and ordered a fitness hearing. *People v. Harris*, 206 Ill. 2d 293, 304 (2002); *People v. Williams*, 364 Ill. App. 3d 1017, 1027 (2006). In this context, an appeal from a first-stage dismissal of a postconviction petition, defendant need only establish it is arguable the trial court would have found a *bona fide* doubt of defendant's fitness and granted a fitness hearing to prove the prejudice prong. See *Stephens*, 2012 IL App (1st) 110296, ¶¶ 103, 107; see generally *Hodges*, 234 Ill. 2d at 17. We do not need to consider the first prong of this test when the second prong cannot be satisfied. *Stephens*, 2012 IL App (1st) 110296, ¶ 102.

¶ 44   We find defendant's petition is based on an indisputably meritless legal theory and was properly summarily dismissed at the first-stage proceedings. See *Hodges*, 234 Ill. 2d at 16 (a postconviction petition may be summarily dismissed if the petition is based on an indisputably meritless legal theory, *i.e.*, one that is completely contradicted by the record). As previously discussed at length, it is not arguable that the trial court would have found a *bona fide* doubt of defendant's fitness and granted a fitness hearing as defendant's claim is contradicted by the record. While the record and the documents attached to the petition demonstrate that defendant had a history of mental illness and that he was taking medication at the time of his plea, these facts only establish defendant suffered a mental illness. Any inference, however, from these facts that defendant was unable to understand the nature or purpose of the proceedings or assist in his defense is indisputably contradicted by the record. The issue is not mental illness but rather "whether defendant could understand the proceedings and cooperate with counsel." See *Harris*, 206 Ill. 2d at 305. Specifically, our supreme court has stated that "[f]itness speaks only to a person's ability to function within the context of a trial. It does not refer to sanity or competence in other areas." *Easley*, 192 Ill. 2d at 320. If defendant could understand the

proceedings against him and cooperate with counsel, then regardless of mental illness, defendant will be deemed fit to stand trial. *Id.* at 323.

¶ 45 As discussed previously, the record in this matter demonstrates that defendant understood the nature and purpose of the proceedings. Prior to trial, defendant's counsel arranged for a psychologist to evaluate defendant. Coleman found defendant fit to stand trial but could not opine regarding defendant's fitness to stand trial with medication. Flippen, a forensic clinical services physician, determined defendant was fit to stand trial with medication. Each evaluator found defendant understood the nature of the proceedings, the charges pending against him, and determined that he was able to assist counsel in his defense.

¶ 46 While the record demonstrates defendant failed to cooperate with subsequent evaluators, the record further discloses that the evaluators, namely Coleman, Lourgos, and Neu, attributed the severity of defendant's purported symptoms with malingering. None of these evaluators expressed an opinion that defendant was incapable of understanding the proceedings against him or assisting counsel in his defense. Moreover, our limited record demonstrates that when defendant was present in court he behaved respectfully and rationally.

¶ 47 Additionally, the trial court advised defendant of the charges against him and the possible sentencing range, and defendant stated that he wished to plead guilty. The trial court further advised defendant to his right to a jury trial, his right to a bench trial, his right to confront and cross-examine witnesses, his right to call witnesses on his own behalf, and his right to testify or to remain silent. To each of those statements defendant responded that he understood he would be giving up those rights upon pleading guilty. The trial court also asked defendant if he was pleading guilty of his own free will, and defendant stated he was.

¶ 48 Moreover, twice during the sentencing hearing, defense counsel informed the trial court of defendant's desire (1) to have the mittimus stayed for two weeks and (2) to be placed in protective custody. While the trial court granted defendant's request to stay the mittimus, it indicated it could not order defendant be placed in protective custody. These exchanges during the sentencing portion of the hearing further demonstrate that defendant was able to effectively communicate with counsel and understood the nature of the proceedings.

¶ 49 For these reasons, we conclude that there was not a *bona fide* doubt of defendant's fitness to stand trial, and thus, it was not arguable that defendant was prejudiced by defense counsel's failure to request a fitness hearing. See *Stephens*, 2012 IL App (1st) 110296, ¶ 107; *Easley*, 192 Ill. 2d at 323. Accordingly, we find the circuit court did not err when it summarily dismissed defendant's first-stage postconviction petition.

¶ 50                                         CONCLUSION

¶ 51        For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 52        Affirmed.