NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 240195-U

NO. 4-24-0195

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 19, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| GREGORY A. JOHNSON, | ) | No. 23CF35 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer Hartmann Bauknecht, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The trial court did not abuse its discretion when it failed to *sua sponte* conduct a fitness hearing before allowing defendant to proceed *pro se*.

¶ 2        In October 2023, following a bench trial, defendant, Gregory A. Johnson, was found guilty of two counts of aggravated battery to a correctional officer (720 ILCS 5/12-3.05(d)(4)(i) (West 2020)). In February 2024, the trial court sentenced defendant to two concurrent prison sentences of three years.

¶ 3        Defendant appeals, arguing only that the trial court erred by failing to *sua sponte* conduct a fitness hearing before allowing him to proceed *pro se* because there was a *bona fide* doubt as to his fitness. We affirm.

¶ 4                                I. BACKGROUND

¶ 5                                A. The Charges

¶ 6        In February 2023, the State charged defendant by indictment with two counts of aggravated battery to a correctional officer (720 ILCS 5/12-3.05(d)(4)(i) (West 2020)) arising out of a March 2020 incident at Pontiac Correctional Center. Specifically, the State alleged that defendant committed aggravated battery against Correctional Officers Jordan Sparks and Alexander Lawrence by throwing "an unknown liquid substance" on them.

¶ 7                    B. Admonishments and Arraignment

¶ 8        In April 2023, the trial court conducted its first hearing on defendant's charges, at which defendant appeared in the custody of the Illinois Department of Corrections. The court advised defendant of his right to an attorney, and he asserted that he wanted to proceed *pro se*. The court suggested that defendant speak first with an assistant public defender before making his decision. Defendant agreed, and the court continued the case.

¶ 9        In May 2023, the trial court conducted a hearing at which defendant again asserted that he wanted to represent himself. The court then questioned defendant to determine whether he was knowingly and intelligently waiving his right to an attorney.

¶ 10        In response to the trial court's questioning, defendant stated the following: (1) he had been diagnosed with posttraumatic stress disorder and antisocial personality disorder; (2) he was taking medication for those conditions; (3) those medications did not interfere with his cognition or decision-making; (4) he believed he was of sound mind; (5) he had been hospitalized and placed in a mental health institution several times due to his mental illnesses; (6) he was found fit to stand trial in a previous case, which was on appeal regarding that issue; (7) he believed that he was fit to stand trial and represent himself because, unlike the previous case, he was regularly taking his medication; and (8) he had never proceeded *pro se* before.

¶ 11        The trial court then admonished defendant of the charges against him, the possible

sentences he faced, and the benefits of having defense counsel. The court asked whether defendant had any questions, and defendant answered, "No." The court found a "knowing and voluntary waiver of the right to counsel."

¶ 12        The trial court then formally read the charges against defendant and asked how he would like to plead. The following colloquy occurred:

"THE DEFENDANT: Before I take any plea, there are some questions I would like to ask.

THE COURT: Well, sir, that is not how this proceeding is going to work today.

THE DEFENDANT: Well, I cannot give any plea if I cannot ask these questions, because the fact that I am not fully understanding the procedure, the language of the charge in which I'm being charged with.

THE COURT: If you don't understand the language of the charge you're being changed (sic) with, that's pretty basic. I might have to reconsider—

THE DEFENDANT: It's not basic at all.

THE COURT: Sir, if these are the kind of games that you're going to play, that's fine, but I am going to appoint an attorney to represent you, because I asked you not five minutes ago if you understood the charges and you said, yes; and now you're telling me that you don't understand what I would say is very basic language of the charging instrument. So,—

THE DEFENDANT: It's not basic.

THE COURT: Okay. Then what is it that you don't understand about it?

THE DEFENDANT: What I don't understand about it is this: You're saying

that this case is supposed to be against the People of the State of Illinois. Correct?

THE COURT: I'm not here to answer your questions, sir.

THE DEFENDANT: Okay. Well, let me ask the State then.

THE COURT: You don't get to ask the State questions during this proceeding; but I'm asking you what you don't understand about the indictment, because I'm very close to vacating my order allowing you to proceed *pro se* if you can't get past step one, which is, I read the charges to you, you enter a plea of guilty or not guilty. If we can't make it past this stage, there is no way we can make it to a trial, if you don't understand basically the charge that says you committed a battery because you threw an unknown liquid substance on Jordan Sparks who was a correctional institution employee of the State of Illinois and engaged in the performance of his official duties at the time that you did that. That is the allegation against you. You don't understand that?

THE DEFENDANT: No, I didn't do it.

THE COURT: That is a plea of not guilty. I'm asking if you understand what the charges are.

THE DEFENDANT: Yes, I understand what the charges are.

THE COURT: Okay. Do you plead guilty to that charge or not guilty?

THE DEFENDANT: No, I'm not going to plead not guilty.

THE COURT: Okay, very good. The Court is concerned that the defendant is either, A, playing games or, B, does not understand what is involved in these charges and these legal proceedings. Entering of a plea is a very basic first step to get this case moving forward. If he doesn't want to enter a plea, that's fine; but I

- 4 -

am going to have to appoint an attorney who can assist him so that he understands the nature of the proceedings.

THE DEFENDANT: I don't think you want to do that.

THE COURT: All right. So, the order of this Court finding the defendant knowingly and intelligently waived his right to counsel is vacated. I do not believe that he understands what he is doing. I am concerned about his fitness and ability to represent himself given the fact that he cannot even get past the very first stage which is understanding the charges. So, I am appointing counsel. The public defender is present and appointed to represent the defendant.

I am going to show that I did reading of Count 1. Ms. Metoyer is now present and was present during the majority of the admonitions."

¶ 13   The trial court then read the second count to defendant, after which it asked defendant, "I'll give you one more chance, do you want to represent yourself?" Defendant said, "Yes." He also stated that he understood the charges and penalties he faced. The court asked defendant to say what he believed the charges to be. Defendant responded, "Aggravated Battery. *** [A]pparently, I caused something to come into contact with somebody that worked for the Pontiac correctional facility." The court asked if defendant wanted to represent himself but not plead guilty at that time. Defendant answered, "I'm not saying I don't want to enter a plea; I'm saying I would like to ask a question before I can tender my plea." The court explained that if he had questions, neither the State nor the court would have to answer him. Ultimately, defendant pleaded not guilty, stating that he would "just be going forward not understanding then."

¶ 14                    C. Defendant's Pretrial Motions

¶ 15   Defendant filed several pretrial motions, including a motion to dismiss, in which

he argued, among other things, (1) he was not properly identified in the charging instrument, (2) the grand jury was not properly sworn in, (3) the grand jury was deliberately misled by the State, (4) the State lacked standing, and (5) the trial court lacked jurisdiction. Defendant contended that the plaintiff had to be a "positively identifiable person (human being)" and have suffered personal injury. According to defendant, "The People of Illinois" was a legal fiction and had suffered no injury. In addition, defendant contended that the "seven elements of jurisdiction" (no citation to authority was given) provided that the charges had to be dismissed because the accusations against him had to be made under threat of perjury, which the State, as a legal fiction, could not do.

¶ 16        In September 2023, the trial court conducted a hearing on defendant's motion to dismiss and denied it.

¶ 17                    D. The Bench Trial and Sentencing

¶ 18        In October 2023, before conducting defendant's bench trial, the trial court addressed defendant's other motions. Defendant made arguments similar to those in his motion to dismiss, and the court ultimately denied the motions.

¶ 19        Subsequently, the trial court conducted defendant's bench trial. The two correctional officers, Sparks and Lawrence, testified that on March 19, 2020, defendant threw a liquid that smelled like urine on them as they walked by defendant's cell. A video showing defendant's actions was played for the court and entered into evidence. On cross-examination, defendant asked a variety of questions in an attempt to show that the State's indictment did not properly identify him and was thus illegitimate. For example, he produced a prison identification card, which showed that he had a middle initial in his name, and he noted that the indictment did not include that initial. The State rested, and defendant did not present any witnesses or testify.

The court found defendant guilty of both counts of aggravated battery.

¶ 20    Defendant filed a "Motion for Reconsideration in Guilty Verdict of Defendant," asserting some of the same legal arguments he previously raised. The trial court denied the motion.

¶ 21    In February 2024, the trial court sentenced defendant to two concurrent terms of three years in prison.

¶ 22    This appeal followed.

¶ 23                                II. ANALYSIS

¶ 24    Defendant appeals, arguing only that the trial court erred by failing to conduct a fitness hearing before allowing him to proceed *pro se* because there was a *bona fide* doubt as to his fitness. We affirm.

¶ 25                A. The Applicable Law and Standard of Review

¶ 26    "The due process clause prohibits the prosecution of a defendant who is unfit to stand trial." *People v. Westfall*, 2018 IL App (4th) 150997, ¶ 52. A defendant is unfit to stand trial if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense. 725 ILCS 5/104-10 (West 2022). A defendant is presumed to be fit. *Id.*

¶ 27    In relevant part, section 104-11 of the Code of Criminal Procedure of 1963 provides the following:

> "(a) The issue of the defendant's fitness for trial, to plead, or to be sentenced may be raised by the defense, the State or the Court at any appropriate time before a plea is entered or before, during, or after trial. When a *bona fide* doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further.

(b) Upon request of the defendant that a qualified expert be appointed to examine him or her to determine prior to trial if a *bona fide* doubt as to his or her fitness to stand trial may be raised, the court, in its discretion, may order an appropriate examination. However, no order entered pursuant to this subsection shall prevent further proceedings in the case. An expert so appointed shall examine the defendant and make a report as provided in Section 104-15." *Id.* § 104-11(a)-(b).

¶ 28 "A *bona fide* doubt exists when the facts raise a real, substantial, and legitimate doubt regarding a defendant's mental capacity to meaningfully participate in his defense." *Westfall*, 2018 IL App (4th) 150997, ¶ 54. "Relevant factors that the trial court may consider in assessing whether a *bona fide* doubt exists include (1) the defendant's behavior and demeanor, (2) prior medical opinions regarding the defendant's competence, and (3) defense counsel's representations about the defendant's competence." *Id.* (citing *People v. Rosado*, 2016 IL App (1st) 140826, ¶ 31). "If the trial court concludes that no *bona fide* doubt exists, then it need not conduct a fitness hearing." *Id.* (citing *People v. Hanson*, 212 Ill. 2d 212, 217 (2004)).

¶ 29 "Whether a *bona fide* doubt of the defendant's fitness exists is a matter within the trial court's discretion." *People v. Nichols*, 2012 IL App (4th) 110519, ¶ 31. "Where no fitness hearing was held, we will reverse a conviction and remand for a new trial only where the trial court abused its discretion in failing to act on a *bona fide* doubt of the defendant's fitness." *Id.* "In evaluating the trial court's exercise of its discretion, we will keep in mind that the trial court is in a superior position to view the defendant's behavior firsthand and to determine based on its observation whether the requisite doubt exists." *Id.* "A trial court abuses its discretion only where no reasonable person would take the court's view or where its ruling is arbitrary, fanciful, or

unreasonable." *People v. Washington*, 2016 IL App (1st) 131198, ¶ 72.

¶ 30                                    B. This Case

¶ 31          Defendant argues that the trial court erred by allowing him to waive his right to counsel and proceed *pro se* because (1) the court expressed concern for his fitness and (2) his conduct, arguments, and mental health history showed that there was a *bona fide* doubt of his fitness. Accordingly, defendant argues that the court was required to conduct a fitness hearing before allowing him to proceed *pro se*. We disagree.

¶ 32          Regarding the trial court's expressed "concern" for defendant's fitness, taking the record as a whole, we do not agree with defendant's characterization of the court's statements and actions at the May 2023 hearing as indicating that the court had a *bona fide* doubt of defendant's fitness. Instead, the court's statement that it was "concerned about his fitness and ability to represent himself" was clearly meant to communicate to defendant that he would not be allowed to represent himself if he persisted in undermining the proceedings by feigning ignorance and refusing to plead unless his questions were answered by the court or the State.

¶ 33          Defendant had already told the trial court that he understood the charges against him and stated he did not have any questions. However, once the court asked for his plea, defendant responded that (1) he could not make a plea until he had certain questions answered and (2) he did not "fully understand[ ] the procedure, the language of the charge." He then highlighted that the "case is supposed to be against the People of the State of Illinois." The court stated that "if these are the kind of games that you're going to play," then it would appoint counsel. In response, defendant stated that he understood what the charges were, but he persisted in his assertion that he would not plead guilty.

¶ 34          It was at this point in the proceedings that the trial court noted that defendant was

either "A, playing games or, B, does not understand what is involved in these charges and these legal proceedings" and posed an ultimatum, stating that if defendant did not want to enter a plea, then the court would have to appoint counsel to help him understand the proceedings. After the court stated that it was concerned for defendant's fitness and appointed counsel to represent him, it asked one more time if he wanted to represent himself. He responded, "Yes." Defendant then explained without issue what the charges were against him.

¶ 35       In light of defendant's later arguments in the trial court, defendant's assertions that he did not understand the procedure and needed to ask the State questions about the charges were entirely consistent with his legal theory that the court did not have jurisdiction because the State was not a "human being" who could accuse him. The court recognized defendant's gamesmanship and acted appropriately, employing language designed to make defendant behave and answer the court's questions appropriately during the proceedings. Ultimately, the full context of the court's statement shows it (1) did not express that it had a *bona fide* doubt of defendant's fitness and (2) was satisfied that defendant knowingly and voluntarily waived his right to counsel.

¶ 36       Next, we disagree with defendant's contention that his (1) having a history of mental illness, (2) taking prescription medications, and (3) making "irrational and delusional claims" throughout the proceedings shows that he had a severe mental illness that rendered him unfit to proceed *pro se*. Relying on the United States Supreme Court's decision in *Indiana v. Edwards*, 554 U.S. 164 (2008), defendant contends that he falls into a "gray area" of defendants who are fit to stand trial but not proceed *pro se*. Accordingly, he argues the trial court erred by failing to *sua sponte* hold a hearing on his mental capacity. However, *Edwards* imposes no such requirement.

¶ 37       Illinois courts have repeatedly held that *Edwards* neither creates a higher standard

of competence, nor requires any additional inquiry, before a trial court may allow a "gray-area" defendant to represent himself. See, *e.g.*, *People v. Rodriguez-Aranda*, 2022 IL App (2d) 200715, ¶ 50 ("*Edwards* is permissive rather than prescriptive: the trial court may deny a severely mentally ill person from representing himself; however, the trial court is not required to perform an additional inquiry regarding competency before allowing a defendant to represent himself."); see also *People v. Tatum*, 389 Ill. App. 3d 656, 670 (2009) (explaining *Edwards* does not impose "a higher standard of competence requiring an additional inquiry before a trial court [may] permit[ ] a defendant to proceed *pro se*"); *People v. McNutt*, 2020 IL App (1st) 173030, ¶¶ 90, 92 (holding *Edwards* does not "require[ ] a higher or different standard of competency be applied to every defendant before he or she is permitted to waive counsel," nor does it require a court "to conduct a separate hearing to assess [a] defendant's competency to waive counsel"); *People v. Allen*, 401 Ill. App. 3d 840, 852 (2010) ("Nothing in *Edwards* requires a trial court to [engage in] the forced denial by the trial court of [the] defendant's right to proceed *pro se* although he was found mentally competent to stand trial.").

¶ 38    Further, defendant's mental illness and past fitness problems are not determinative of whether a *bona fide* doubt of his fitness existed in this case. See *People v. Finlaw*, 2023 IL App (4th) 220797, ¶ 50 (" 'Fitness speaks only to a person's ability to function within the context of a trial; a defendant may be fit to stand trial even though his mind is otherwise unsound.' " (quoting *People v. Haynes*, 174 Ill. 2d 204, 226 (1996))). When questioned, defendant told the trial court that he was taking medication and that he understood the proceedings against him. Unlike this court, the trial court had the opportunity to observe defendant in the courtroom and speak with him on multiple occasions; nevertheless, the court did not indicate that it believed defendant was unfit at any point throughout the proceedings. For that reason, we give deference to the court's decision

not to *sua sponte* conduct a fitness hearing. See *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 53 ("Whether a *bona fide* doubt arose rests largely within the discretion of the trial court which, unlike this court, was in a position to observe a defendant and evaluate his conduct.").

¶ 39 Regarding defendant's contention that his legal arguments demonstrated his lack of fitness, experience shows that defendant's motions and argument are no different than those of many other *pro se* litigants. The record shows that defendant's arguments, both orally and in written form, were consistent and calculated to advance his claim that the trial court did not have jurisdiction over him—a belief that appears to be based on "sovereign citizen" ideology, as the State points out.

¶ 40 Defendant may have dogmatically pursued frivolous arguments, but his doing so does not raise a *bona fide* doubt of his fitness. See *McNutt*, 2020 IL App (1st) 173030, ¶ 97 ("[A] lack of legal sophistication or the advancement of unsupported legal theories, unsuccessful trial strategies, and unwise tactical decisions" is not a valid basis to conclude that a criminal defendant is not competent to proceed *pro se*.).

¶ 41 For the foregoing reasons, we conclude the trial court acted well within its discretion by choosing not to *sua sponte* order a fitness hearing.

¶ 42       III. CONCLUSION

¶ 43 For the reasons stated, we affirm the trial court's judgment.

¶ 44 Affirmed.