2020 IL App (2d) 171022-U
No. 2-17-1022
Order filed May 12, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07-CF-617 |
| JOHN D. DEAN JR., | ) ) ) | Honorable Christen L. Bishop, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Zenoff and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court properly summarily dismissed defendant's postconviction petition, as he did not state a claim of unfitness to plead guilty: although defendant provided medical records to show that he was receiving mental health treatment including medication, the fitness evaluations conducted before and after his guilty plea and the trial court's detailed recollection of the guilty plea hearing refuted his claim that he could not understand the proceedings.

¶ 2    Defendant, John D. Dean Jr., appeals the judgment summarily dismissing his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2016)) from his conviction of first-degree murder (720 ILCS 5/9-1(a)(1) (West 2006)). We affirm.

¶ 3                                I. BACKGROUND

¶ 4    On February 20, 2007, defendant was arrested and subsequently charged with the first-degree murder of his wife. Defense counsel obtained a medical expert to examine defendant for the purpose of possible defenses.

¶ 5    On June 10, 2009, defense counsel moved for a fitness evaluation, due to defendant's "delusional thinking." Based on counsel's representations, the trial court found a *bona fide* doubt as to defendant's fitness and ordered a fitness evaluation.

¶ 6    The fitness evaluation took place on June 15, 2009. The examiner noted that defendant was cooperative but somewhat depressed. The examiner found "no evidence of delusional thinking or other indicators of a formal thought disorder." Defendant advised the examiner that he had been diagnosed with bipolar disorder and had been on psychotropic medication since that time. Defendant was prescribed "100 mg. Thorazine at bedtime, 100 mg Trazodone at bedtime, and 20 mg. of Prozac during the day." Defendant told the examiner that he had been suicidal when he was initially incarcerated but was no longer suicidal. Defendant also told the examiner that "he sleeps all the time now but does not always eat his meals and instead will eat food from the commissary." The examiner noted that defendant "was able to adequately answer the questions related to the legal proceeding." The examiner concluded that defendant's mental condition did not interfere with his ability to understand the nature and purpose of the legal proceedings or with his ability to assist his attorney in his defense.

¶ 7    On June 17, 2009, the parties stipulated to the findings contained in the fitness evaluation. Defendant told the trial court that he had taken his medication that morning. The court stated that it had reviewed the report, accepted the parties' stipulation, and found defendant fit to stand trial or enter a plea.

¶ 8    On August 17, 2009, the trial court advised defendant that the parties wished to have a conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 1997). The court explained the procedure to defendant, and defendant consented to the conference. After the conference, the court advised defendant as to the parties' discussions and the following colloquy occurred:

"THE COURT: *** [Defense counsel] said you do have a bit of a history of mental health issues, that you were in fact discharged from the service as a result of a mental health problem, that at the time that this offense was alleged to have occurred, you were not taking your medication.

Since this happened, since he's been in custody, a fitness evaluation was ordered where you were examined and found fit to stand trial and prescribed medications. So now having said that, did you take your medication today?

THE DEFENDANT: Yes.

THE COURT: When do you take your meds? When do you normally take your medications?

THE DEFENDANT: In the morning.

THE COURT: And did you take it this morning?

THE DEFENDANT: Yes.

THE COURT: Are you feeling okay?

THE DEFENDANT: Yes.

THE COURT: Are you able to understand everything I've said so far?

THE DEFENDANT: Yes.

THE COURT: Okay. And when your take your medication, how does it make you feel?

THE DEFENDANT: It makes me feel drowsy.

THE COURT: Drowsy. Are you able to pay attention, though?

THE DEFENDANT: Yes.

THE COURT: Does it calm you down?

THE DEFENDANT: Yes.

THE COURT: Okay. If you don't take it, do you feel better after you take it?

THE DEFENDANT: Yes.

THE COURT: Okay. Good. All right."

¶ 9 At the end of the proceedings, the trial court agreed to give defendant time to discuss the matter with defense counsel. Defendant indicated that he did not have any questions for the court. The court advised defendant that, if any questions later arose, it would be happy to address them at the next hearing. Defendant responded, "Yes, sir."

¶ 10 On September 1, 2009, defendant pleaded guilty to first-degree murder in exchange for the dismissal of seven other first-degree murder charges and a sentencing cap of 45 years. Prior to accepting defendant's plea, the trial court asked defendant if he had any questions, whether he had taken his medication that morning, and how he was feeling. Defendant told him that he had taken his medication and that he was feeling "[o]kay." The court also asked if he was able to understand everything that he and his attorney had talked about and defendant responded, "Yes." The court then admonished defendant in accordance with Rule 402(a) (eff. July 1, 1997). Defendant indicated that he understood each of the court's admonishments. Defendant also indicated that he did not have any questions. The court heard the factual basis for the plea and defendant confirmed that the facts were accurate. The court accepted the guilty plea, finding that it was knowing and

voluntary. The court asked defendant if he needed to make any phone calls. Defendant responded that he did and provided the court with a telephone number.

¶ 11    On October 14, 2009, in preparation for sentencing, a psychological evaluation of defendant was conducted. The purpose of the evaluation was to assess psychological function and to recommend any necessary treatment. The examiner reported that

"[defendant] presented for the evaluation as cooperative and as depressed. Though he continues on psychotropic medication and currently is prescribed Thorazine (an antipsychotic medication), Prozac (an antidepressant medication), and Trazodone (an antidepressant medication), he continues to present as depressed and tries to sleep away his days. His significant depression was noted on the psychological testing as well, and [defendant] reported he feels depressed. Also evident were signs of Tardive Dyskinesia including tongue and hand movements. These extrapyramidal symptoms are side effects likely from his prescribed Thorazine and a long history of use of antipsychotic medications."

The examiner noted that "[defendant] claims he spends most of his days sleeping and added he prefers to just sleep away his life." She found "no evidence of delusional thinking or other indicators of a formal thought disorder." She reported that "his thinking was rational, and his speech was coherent. [Defendant] was alert and oriented to time, place, person, and situation." She reported that his "[a]bility to concentrate and attend appeared unimpaired. Judgment and level of insight are assessed as ranging from fair to poor." She further reported that his "[l]evel of intellectual functioning as assessed by testing was within an Average range."

¶ 12    At the outset of the sentencing hearing, on November 6, 2009, the trial court asked defendant if he was taking his medication. Defendant responded that he was and that he had taken

his medication that morning. When asked how he was feeling, defendant told the court, "I'm okay." The court asked defendant whether he had understood everything that had taken place so far, and defendant responded, "Yes." The court told defendant that he should let his attorney know if anything became confusing to him. Defendant responded, "Yes."

¶ 13    In allocution, defendant stated that he was sorry for what happened, that he did not intend to kill his wife, that the murder would not have happened had his wife not pulled a knife on him, and that he loved his wife. He asked forgiveness from his wife's mother, his wife's son, and God. The court imposed a 33-year sentence and asked defendant if he had any questions. Defendant responded, "No."

¶ 14    Defendant moved for reconsideration of his sentence. The trial court denied defendant's motion, and defendant timely appealed. On appeal, we vacated the court's order and remanded the cause for compliance with Illinois Supreme Court Rules 604(d) (eff. July 1, 2006) and 605(c) (eff. Oct. 1, 2001). *People v. Dean*, No. 2-10-0240 (2010) (unpublished summary order under Supreme Court Rule 23).

¶ 15    On remand, defendant moved to withdraw his plea, alleging that "[a]t the time of the entry of the plea, and for a long time prior thereto, he was being medicated in an amount that affected his ability to reason and understand and he did not fully appreciate the consequences of his plea" and that "[s]ince his medication dosage has been reduced he is more alert and better able to reason and understand matters." He also alleged that he was never informed that, if he had proceeded to trial, the jury could have found him guilty of the less serious offense of second-degree murder. He further claimed that his plea was improperly induced by his attorney, who did not want to try the case.

¶ 16    On May 26, 2011, the trial court heard defendant's motion. Counsel argued that defendant did not knowingly and voluntarily plead guilty, because at the time of the plea he was taking two antipsychotic drugs, which made him sleepy and interfered with his ability to reason and understand what was taking place. The court rejected that argument, stating as follows:

> "I mean I recall [defendant's] case even though it has been almost two years. I recall it very vividly because of the nature of the offense. I recall the [Rule] 402 conference.

> I recall frankly a gentleman, an elderly gentleman, who was, you know, by the circumstances that he found himself in remorseful and upset about what had taken place in this case with his long time paramour.

> I knew—I was advised in the [Rule] 402 conference by [defense counsel] that he took medication. I inquired of that as I made the record on the [Rule] 402 conference in August. I inquired of that in September when I took the plea.

> I make a particular habit when I take a plea on any plea, whether it's a retail theft or a murder case, to look the person in the eye when I am taking the plea to look for any sign that there is any hesitation, any confusion, any reticence at all from continuing on with their plea.

> I did that with [defendant]. I particularly remember doing that with [defendant] at the time the plea was taken. I particularly remember that with [defendant] because it was unknown to the Court at the time whether or not the parties were going to be able to resolve the case. We were up against a trial date; and we were in a posture where if there was no negotiation, we were going to proceed to trial.

> [Defendant] seemed lucid. His responses were instantaneous to the Court's questions. There was no hesitation. There was no double clutching. He did not ask for

things to be repeated or to be explained to him in any more detail. His responses to the Court's questions were contemporaneous and were done without any hesitation on his part from my perspective.

Beyond inquiring of his medication and how it makes him feel, I don't know what else this court can do to insure [*sic*] that a person who is medicated is able to proceed. I did that. I asked him those questions; and he indicated that he had understood and was entering into the plea knowingly, voluntarily, and without hesitation."

¶ 17 The trial court inquired about defendant's claim that he was not informed that if he went to trial the jury could have found him guilty merely of second-degree murder. Defendant told the court that at the time of the plea, he was "under the influence of medication." He claimed that he did not understand what was going on. He stated: "My main concern was getting back to my pod and going back to sleep because that's one of the side effects of my medication. I slept for three years of my life away in this jail. I was unaware of most of the time what was really going on because that wasn't my main focus." He stated that he was not treated fairly, due to his condition. He stated: "Although my answers were affirmative that I was aware, it was more or less a mechanical type response because like I said, the only thing I was interested in was going back and slipping into slumber due to the side effects of the heavy medication I was on."

¶ 18 The trial court rejected defendant's argument, stating, in part:

"As I indicated earlier, I looked you right in the eye when I took that plea ***. Had you been as stoned on the medication as you say you were, there is not a chance in the world I would have taken that plea from you.

I have rejected pleas in the middle of pleas from defendants that I feel are over medicated or not making a decision based on a full understanding of the rights that they are giving up and the negotiation that they are entering into.

In this case, I recall you entering into this negotiation in a way that was knowing, intelligent, and voluntary. I don't have any recollection of you being in the condition that you profess that you were in today."

¶ 19 The trial court rejected defendant's remaining arguments and denied the motion. Defendant timely appealed, arguing that new counsel should have been appointed to argue the motion, where the motion alleged counsel's ineffectiveness. We disagreed and affirmed. *People v. Dean*, 2012 IL App (2d) 110505.

¶ 20 On August 28, 2017, defendant filed a *pro se* petition for postconviction relief under the Act, asserting that his constitutional rights were violated because he "was incompetent to stand trial." He also argued that trial counsel was ineffective in failing to conduct a reasonable pretrial investigation, that his guilty plea was the product of ineffective assistance of counsel, and that his appellate counsel was ineffective. Defendant averred in an attached affidavit that he "was heavily medicated from Feb 07 till Jan 2016." He claimed

"I, [defendant], \*\*\* was heavily medicated prior to any court date, of which such medication doses made it totally impossible for me to fully understand what my attorney was telling me as well as the court. No way was I competent to stand trial nor fully aware of my surroundings nor was I even capable to even make a knowingly [*sic*] and intelligent decision due to heavy doses of mental health medication."

Defendant attached medical records from his time in custody. He specifically relies on the following records:

- "Progress Notes," dated June 24, 2009, indicating that defendant's "leg gave out," causing him to fall to the floor.

- "Progress Notes," dated June 25, 2009, indicating that defendant reported that he could not move his foot and had been sleeping a lot. He had refused several meals and, later that day, an officer requested that a nurse check on defendant because he had been in bed all day and had not eaten his last five meals. The nurse reported that defendant appeared lethargic with slurred speech and a slight shaking of his lips and chin.

- "Staff Referral Form," dated July 22, 2009, indicating that "Tremors of body have increased in severity falling more freq–unsteady gait–mouth and all extremities uncontrolled tremors @ rest."

- Mental Health Progress Notes," dated July 25, 2009, show that defendant reported that he was "feeling tired and dizzy" and that he was "feeling weak."

¶ 21    On November 13, 2017, the trial court summarily dismissed the petition as frivolous and patently without merit, stating: "The issues raised by Petitioner in this Petition were raised on appeal or could have been raised on appeal and no exceptions have been shown."

¶ 22    Defendant timely appealed.

¶ 23                                II. ANALYSIS

¶ 24    Defendant argues that the trial court erred in summarily dismissing his postconviction petition, where the petition alleged an arguably meritorious claim that he was mentally incapable of entering a knowing and voluntary guilty plea. The State responds that defendant's claim has been forfeited, because it could have been raised on direct appeal, and that it is otherwise frivolous.

¶ 25    The Act provides a method by which criminal defendants can assert that their convictions and sentences were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. See 725 ILCS 5/122-1 *et seq.* (West 2016); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A postconviction proceeding contains three distinct stages. *Hodges*, 234 Ill. 2d at 10. This appeal concerns a summary dismissal at the first stage. At the first stage, the trial court must independently review the petition, taking the allegations as true, and determine whether the claim in the petition is "frivolous or patently without merit." (Internal quotations omitted.) *Id.* A postconviction petition is frivolous or patently without merit only if it "has no arguable basis either in law or in fact." *Id.* at 16. A petition that has no arguable basis in law or in fact is "based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* An indisputably meritless legal theory is one that is "completely contradicted by the record," and a fanciful factual allegation is one that is "fantastic or delusional." *Id.* at 16-17. We review the summary dismissal of a postconviction petition *de novo. People v. Tate*, 2012 IL 112214, ¶ 10.

¶ 26    Initially, we reject the State's argument that defendant has forfeited his claim by failing to raise it on direct appeal. "The purpose of the postconviction proceeding is to permit inquiry into constitutional issues involved in the original trial that have not been, and could not have been, adjudicated previously upon direct review." *People v. Taylor*, 237 Ill. 2d 356, 372 (2010). "[I]ssues that could have been presented on direct review, but were not, are procedurally forfeited." *Id.* However, "[r]ules of procedural default *** are relaxed where the facts pertaining to a postconviction claim do not appear on the face of the trial record." *Id.* at 372. Here, we agree with defendant that his claim is not barred by forfeiture, because the medical records upon which he relies were not part of the trial record and could not have been considered on direct review.

¶ 27    Nevertheless, we determine that defendant's claim that he was mentally incapable of entering a knowing and voluntary guilty plea is frivolous or patently without merit. "A defendant is presumed to be fit to stand trial or to plead, and be sentenced. A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2018); *People v. Brown*, 236 Ill. 2d 175, 186 (2010). "Due process requires that the court accept defendant's guilty plea only upon an affirmative showing that defendant entered his plea voluntarily and knowingly." *People v. Haywood*, 2016 IL App (1st) 133201, ¶ 36. To that end, Rule 402(a) requires that, before the court accepts a guilty plea, it must admonish the defendant and determine that he understands: (1) the nature of the charge, (2) the minimum and maximum sentencing ranges, (3) that he has a right to plead not guilty, persist in that plea if it has already been made, or plead guilty, and (4) that, by pleading guilty, he waives the right to a jury trial and to confront witnesses against him. Ill. S. Ct. R. 402(a) (eff. July 1, 1997); *Haywood*, 2016 IL App (1st) 133201, ¶ 36. Rule 402(b) provides that, before accepting a plea of guilty, the court must determine that the plea was voluntary, state the plea agreement in open court, confirm the terms of the plea agreement by questioning the defendant, and determine whether any force, threats, or promises, separate from the plea agreement, were used to obtain the plea. Ill. S. Ct. R. 402(b) (eff. July 1, 1997).

¶ 28    Defendant does not argue that he was not properly admonished. Instead, he argues that certain medical records attached to his petition establish that "his health took a turn for the worse," after he was examined for fitness in June 2009 but before he pleaded guilty in September 2009. He contends that, based on this "documented deterioration," it is at least arguable that defendant's condition "affected his ability to knowingly and intelligently plead guilty." We hold that this claim

does not have an arguable basis in either fact or in law and thus was properly dismissed at the first stage of postconviction proceedings.

¶ 29    First, defendant's claim that he was not fit to plead guilty does not have an arguable basis in fact. Defendant argues that his claim cannot be deemed fantastic or delusional, because certain medical records corroborate his claim. We disagree. Defendant relies on medical records from two days in June 2009 and two days in July 2009. To be sure, those records showed defendant was experiencing some physical problems, he was refusing some meals, he was lethargic, his speech was slurred, and he possibly was tired, dizzy, and weak. However, there is no indication that these conditions, sparsely documented in June and July, prevented him from knowingly and voluntarily pleading guilty on September 1, 2009. Indeed, the medical records do not set forth any medical opinion on the issue of defendant's fitness. See *People v. Rosado*, 2016 IL App (1st) 140826, ¶ 33 (determining that the defendant's medical records did not arguably raise a *bona fide* doubt of defendant's fitness, where they did not set forth any opinion on the issue of the defendant's fitness or indicate that the defendant could not understand the trial proceedings or assist in his defense).

¶ 30    Moreover, defendant's claim that he was mentally unfit to plead guilty does not have an arguable basis in law, as it is rebutted by the record. It is important to consider defendant's claim in the context of the proceedings. Defendant was evaluated on June 15, 2009, and was found fit to stand trial or plead. At that time, defendant was taking Thorazine, Trazodone, and Prozac. The examiner noted that he was cooperative but depressed. Defendant reported that "he sleeps all the time now but does not always eat his meals and instead will eat food from the commissary." Nevertheless, the examiner noted that defendant "was able to adequately answer the questions related to the legal proceeding." The examiner concluded that defendant's mental condition did

not interfere with his ability to understand the nature and purpose of the legal proceedings or with his ability to assist his attorney in his defense.

¶ 31    Defendant argues that the fitness evaluation does not positively rebut his claim because it was performed before "the downturn in his physical and mental condition." However, defendant overlooks his subsequent evaluation on October 14, 2009, after he pleaded guilty but before he was sentenced. The October evaluation did not differ significantly from the June evaluation. The similarity in their results rebuts any claim that defendant was not mentally competent, as he offers no plausible explanation for how he became unfit before pleading guilty but regained competency before sentencing.

¶ 32    In October 2009, defendant's prescribed medications had not changed; he was taking Thorazine, Trazodone, and Prozac. The records noted that defendant was cooperative but depressed and that defendant "prefers to just sleep away his life." Although the examiner noted "signs of Tardive Dyskinesia including tongue and hand movements," which were "side effects likely from his prescribed Thorazine and a long history of use of antipsychotic medications," there was no indication that this affected his cognitive abilities. Indeed, the examiner found "no evidence of delusional thinking or other indicators of a formal thought disorder." She reported that "his thinking was rational, and his speech was coherent." She also reported that "[defendant] was alert and oriented to time, place, person, and situation." She reported that his "[a]bility to concentrate and attend appeared unimpaired." She also reported that "[j]udgment and level of insight are assessed as ranging from fair to poor." She further reported that his "[l]evel of intellectual functioning as assessed by testing was within an Average range." Thus, the two fitness evaluations rebut defendant's claim that he was unfit when he pleaded guilty.

¶ 33    In addition to the fitness evaluations, the report of proceedings from the Rule 402 conference and the plea hearing rebut defendant's claim that he was unfit. Indeed, the record shows that the trial court was well aware of, and particularly sensitive to, defendant's mental health issues. For instance, on August 17, 2009, the day of the Rule 402 conference, the court noted the fitness evaluation and that defendant had been prescribed certain medication. The court asked defendant whether he had taken his medication and how it made him feel. Defendant responded that he had taken his medication and that it made him feel "drowsy." The court inquired, "Are you able to pay attention, though?" And defendant responded, "Yes." Defendant also stated that he felt better after taking his medication. Two weeks later, at the time of the plea, the court again asked defendant if he had taken his prescribed medication and how he felt. Defendant advised that he had taken his medication that morning and felt "[o]kay. The court asked if defendant had understood everything that he and his attorney had talked about and defendant responded, "Yes." Defendant responded appropriately to each of the court's admonishments.

¶ 34    The trial court also had a first-hand opportunity to respond to defendant's argument that he was not fit, which defendant raised in his motion to vacate his plea. When denying defendant's motion, the court noted that it remembered defendant's case "very vividly" and that it recalled the Rule 402 conference. The court stated: "I make a particular habit when I take a plea on any plea, whether it's a retail theft or a murder case, to look the person in the eye when I am taking the plea to look for any sign that there is any hesitation, any confusion, any reticence at all from continuing on with their plea." The court indicated that it "particularly remember[ed]" surveying defendant before accepting the plea. The court recalled:

   "[Defendant] seemed lucid. His responses were instantaneous to the Court's questions.
   There was no hesitation. There was no double clutching. He did not ask for things to be

repeated or to be explained to him in any more detail. His responses to the Court's questions were contemporaneous and were done without any hesitation on his part from my perspective."

¶ 35    Defendant also argued, as he does on appeal, that he was "under the influence of medication" and had no idea what was going on. He told the court: "Although my answers were affirmative that I was aware, it was more or less a mechanical type response because like I said, the only thing I was interested in was going back and slipping into slumber due to the side effects from the heavy medication I was on." The court rejected defendant's argument, stating: "I looked you right in the eye when I took that plea ***. Had you been as stoned on the medication as you say you were, there is not a chance in the world I would have taken that plea from you." The court further stated: "I recall you entering into this negotiation in a way that was knowing, intelligent, and voluntary. I don't have any recollection of you being in the condition that you profess that you were in today."

¶ 36    On appeal, defendant argues that the trial court's comments at the hearing on his motion to vacate his plea do not positively rebut defendant's claim. Defendant relies on *People v. Brown*, 236 Ill. 2d 175 (2010), which is readily distinguishable. In *Brown*, the defendant, armed with a butcher knife, lunged at a police officer and was shot. He was convicted of attempted first degree murder of a peace officer, and more than a month later, at sentencing, he reported a history of mental issues. He claimed that he had been depressed, had previously tried to kill himself, and had lunged at the officers because he wanted them to kill him. He also stated that he had been taking " 'psych medication' " and was told that he should have a psychiatric evaluation but that counsel failed to advise the court. *Id.* at 180. The court questioned counsel, who claimed that he did not know that the defendant was taking psychotropic medication and that the defendant " 'seemed

fine.' " *Id.* The court noted that it had not observed anything in the defendant's conduct or appearance giving rise to a *bona fide* doubt of fitness. The court sentenced the defendant.

¶ 37    The defendant subsequently filed a postconviction petition alleging ineffective assistance of counsel, based on counsel's failure to request a fitness hearing. *Id.* at 181. In support, the defendant attached medical records documenting his bipolar disorder and the prescribed medication to treat it, as well as affidavits from relatives who averred that defense counsel had been informed of defendant's disorder, his medication, and his prior suicide attempt. *Id.* The defendant alleged that the medication treating his bipolar disorder made it difficult for him to understand the nature of the proceedings against him. *Id.* He averred that defense counsel lied when he told the court that he did not know that the defendant was taking medication. *Id.* The trial court summarily dismissed the defendant's petition. *Id.* at 181-82.

¶ 38    Our supreme court reversed the summary dismissal and remanded the case for second-stage proceedings. In doing so, the supreme court determined that the nature of defendant's attack of the officer was consistent with his allegations that (1) defense counsel knew that he was taking psychotropic medication for bipolar disorder and had previously attempted suicide and (2) the medication hindered his understanding of the trial proceedings. The supreme court held that the allegations arguably raised a *bona fide* doubt of the defendant's ability to understand the nature and purpose of the proceedings and assist in his defense, and thus counsel's failure to request a fitness hearing arguably fell below an objective standard of reasonableness and arguably prejudiced the defendant. *Id.* at 191. The court rejected the State's argument that the record contradicted the defendant's claim. The court noted that defense counsel's statements as to the defendant's fitness were called into question by the defendant's allegations and supporting affidavit claiming that defense counsel lied to the court. The court further found that, although the

court's statement at sentencing about the defendant's conduct and appearance was a relevant consideration, it was not determinative of the defendant's fitness to stand trial, as the court's observations did "not positively rebut any of petitioner's allegations on his mental illness, psychotropic medications, suicide attempts, or failure to understand the trial proceedings." *Id.* at 190.

¶ 39 *Brown* is factually distinguishable from this case. The defendant in *Brown* raised the fitness issue more than one month after pleading guilty. In contrast, defendant's fitness was raised as an issue and a fitness hearing was conducted before defendant pleaded guilty. As noted, the trial court was particularly sensitive to defendant's mental state throughout the proceedings and repeatedly asked defendant if he had taken his medication and how he felt. The court's observations were informed and thorough. They exceeded the general observations made by the court in *Brown*, which at the time of the guilty plea, had not yet been alerted to the defendant's underlying mental issues. Furthermore, unlike in *Brown*, the record here includes medical evaluations of defendant performed shortly before and after he pleaded guilty, indicating that defendant was mentally competent throughout the proceedings.

¶ 40 Based on the foregoing, we hold that the trial court properly summarily dismissed defendant's postconviction petition, where defendant's claim that he was mentally incapable of entering a knowing and voluntary plea was frivolous or patently without merit.

¶ 41                                     III. CONCLUSION

¶ 42 For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 43 Affirmed.